1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MAURICE ANTIONE BRADSHAW,

11              Petitioner,                    No. CIV S-02-0588 MCE CMK P

12        vs.

13    J. MCGRATH, Warden, et al.,

14              Respondents.            FINDINGS AND RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his conviction of second degree

18    murder and the sentence of twenty-three years to life.  Petitioner claims that there was

19    insufficient evidence to support his conviction and that the trial court gave an improper jury

20    instruction.[1]

21    ///

22    ///

23

24    _____

25          [1]Petitioner originally filed a mixed petition.  Respondents filed a motion to dismiss and
      answer.  (Doc. 3.)  In light of the motion to dismiss, petitioner moved the court to dismiss his
26    unexhausted claims and to allow him to proceed only on exhausted claims.  (Doc. 32.)  The
      Court granted petitioner's request.  (Doc. 34.)  The operative petition was filed April 8, 2004.
      (Doc. 31.)

I.      Background[2]

In 1996, petitioner, who was sixteen-years-old, met Carrie Thomas-Henderson (Carrie), who was thirty-years-old.  They began living together and had a child together in 1998.[3] The couple lived in various locations in Sacramento; eventually deciding to move in with a woman named Elaine Cooper (Elaine), who petitioner thought of as his mother.  Elaine's husband and three teenaged children also lived in the house.

Petitioner and Carrie's relationship began to deteriorate after they moved in with Elaine.  Petitioner frequently physically abused Carrie, knocking her teeth out on one occasion. Petitioner frequently told Carrie that, if she tried to leave him, he would kill her.

On the morning of February 25, 1999, petitioner and Carrie began arguing about Carrie leaving the house to take the bus to one of their previous residences to see if her AFDC check had arrived.  Petitioner, who was sick with the flu, did not want Carrie to leave the house. They argued, and Carrie eventually slapped petitioner.  Petitioner pushed Carrie down and began choking her.  She lost consciousness briefly, and petitioner went into the next room.

When Carrie came to, she and petitioner continued to argue and exchange profanities in front of everyone else at Elaine's house.  Carrie told her children to get their shoes on because they were leaving.  Petitioner told her that she could never leave him and take his children; he would kill her first.  Carrie continued to get the children ready to leave.  Petitioner ran out of the house.  He returned within minutes in a rage and confronted Carrie with a handgun. Carrie was holding eight-month-old Marquis.  She backed up and fell over when she saw the gun.  Petitioner stood over her, pointing the gun to her head and repeating that he would kill her if she tried to leave.

---

[2]The unpublished decision of the California Court of Appeal, Third Appellate District contains a more detailed factual summary.  (Answer, Ex 1.)

[3]Carrie had three children from previous marriages who also lived with petitioner and Carrie.  (Answer 5:21-23.)

1      At this point, petitioner loaded a round into the chamber by pulling back on the

2 slide of the semi-automatic with a noticeable clicking sound.   Carrie was afraid that petitioner

3 would shoot her and injure Marquis, so she slapped at the gun to deflect it.   Petitioner had his

4 finger on the trigger, and it discharged as Carrie slapped it.   One shot was fired, striking Genevia

5 Walker, a girlfriend of one of Elaine's sons, in the stomach.   Genevia got up, walked outside,

6 collapsed on the lawn, and subsequently died from the gunshot wound.   Petitioner ran from the

7 house to hide.   On his way to hide, petitioner sold the gun to a gang member for twenty-five

8 dollars.   Within hours of the shooting, petitioner was arrested by police.   When asked about the

9 shooting, petitioner contended that it was an accident.

10 II.    Standards for Granting Habeas Relief

11 _____An application for a writ of habeas corpus by a person in custody under a judgment

12 of a state court can be granted only for violations of the Constitution or laws of the United States.

13 See 28 U.S.C. § 2254(a).   Federal habeas corpus relief also is not available for any claim decided

14 on the merits in state court proceedings unless the state court's adjudication of the claim:

15      (1) resulted in a decision that was contrary to, or involved an unreasonable
          application of, clearly established federal law, as determined by the Supreme Court
16       of the United States; or

17      (2) resulted in a decision that was based on an unreasonable determination of the
          facts in light of the evidence presented in the State court proceeding.
18

19 See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v.

20 Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas

21 relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his

22 Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.

23 Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

24 therefore did not address the merits of petitioner's Eighth Amendment claim).   Courts are not

25 required to address the merits of a particular claim, but may simply deny a habeas application on

26 the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71

1  (overruling <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth

2  Circuit required district courts to review state court decisions for error before determining whether

3  relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded

4  from obtaining relief by § 2254(d). <u>See</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

5         The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

6  different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state
> court applies a rule different from the governing law set forth in our cases, or if it
> decides a case differently than we have done on a set of materially
> indistinguishable facts. The court may grant relief under the "unreasonable
> application" clause if the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it to the facts of the
> particular case. The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively unreasonable, and we
> stressed in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000) that an unreasonable application is different from an incorrect one.

13  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law

14  set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

15  cite or fails to indicate an awareness of federal law. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

16        The court will look to the last reasoned state court decision in determining whether

17  the law applied to a particular claim by the state courts was contrary to the law set forth in the

18  cases of the United States Supreme Court or whether an unreasonable application of such law has

19  occurred. <u>See</u> <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919

20  (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a

21  claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

22  perform an independent review of the record to ascertain whether the state court decision was

23  objectively unreasonable. <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.2003).  In other

24  words, the court assumes the state court applied the correct law, and analyzes whether the decision

25  of the state court was based on an objectively unreasonable application of that law.  It is

26  appropriate to look to lower federal court decisions to determine what law has been "clearly

1  established" by the Supreme Court and the reasonableness of a particular application of that law.

2  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

3  III.    Arguments and Analysis

4          A.    Insufficient Evidence (claims 1 and 4)

5          Petitioner claims that there was insufficient evidence to support his conviction of

6  second degree murder in Count one and to support the finding of great bodily injury.  In order to

7  prevail on a claim of insufficiency of the evidence, a petitioner must show that no rational trier of

8  fact could have found the essential elements of the crime charged beyond a reasonable doubt.  See

9  Jackson v.Virginia, 443 U.S. 307, 319 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir.

10  1998).  A reviewing court must consider the evidence as a whole and in a light most favorable to

11  the prosecution.  See Jackson, 443 U.S. at 319.  If the record supports conflicting inferences, it

12  must be presumed that the trier of fact resolved any conflicts in favor of the prosecution, and a

13  reviewing court must defer to that resolution.  See id.; Payne v. Borg, 982 F.2d 335, 338 (9th Cir.

14  1992).  The standard in California state courts for reviewing sufficiency of evidence claims is the

15  same as that set forth in Jackson; People v. Johnson, 26 Cal.3d 557, 578-579 (1980).

16          1.    Insufficient Evidence to Support Second Degree Murder Conviction

17          The last reasoned decision on this claim was the decision of the California Court of

18  Appeal for the Third Appellate District on petitioner's direct appeal.[4]  The state court applied the

19  Jackson factors in denying petitioner's claims:

20          Second degree murder is defined as "the unlawful killing of a human being,
       ...with malice aforethought."  Malice may be express or implied.  Malice is implied
21     when the killer lacks an intent to kill but acts with conscious disregard for life,
       knowing such conduct endangers the life of another.  In order to support a finding
22     of second degree murder, the evidence must show that "the killing resulted from an
       intentional act...the natural consequences of the act are dangerous to human life, and...the act was
23     deliberately performed with knowledge of the danger to, and with conscious disregard for, human
       life."
24

25  ─────────────────

26          [4]The California Supreme Court denied this claim without comment or citation. (Answer,
    Exs.2 and 3.)

Here, a rational jury could find that the act of aiming a gun point-blank in the face of a person holding a baby, and threatening to kill her, in a house full of onlookers, was inherently dangerous to human life. Since defendant admitted he did not check the chamber for unfired bullets, the trier of fact could also conclude his act was undertaken deliberately and with reckless indifference to the consequences.

...Here, defendant not only brandished the weapon, he purposefully aimed it directly at Carrie's forehead while threatening her life. Such conduct qualifies as an act so fraught with inherent danger as to supply the element of malice.

(Answer, Ex. 1, People v. Bradshaw, slip op. at 4-6 (internal citations omitted.))

The state court concluded that a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. After careful review of the record herein, the court finds that the state court's determination of the facts was entirely reasonable, and that its rejection of this claim was neither contrary to nor an unreasonable application of controlling principles of federal law. For example, petitioner intentionally armed himself with a handgun and went into a room crowded with people to confront Carrie. (RT 42, 26, 53-54, 163-164, 171-173.) Petitioner admitted that he never checked the chamber and did not know if the gun was loaded. (RT 382.) Based on the foregoing, the court recommends that petitioner's first claim be denied.

2.      Insufficient Evidence to Support Finding of Great Bodily Injury

Petitioner argues that chocking, resulting in unconsciousness for a few seconds, is not sufficient to support a finding of great bodily injury. The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.

Applying the Jackson standard, the Court of Appeal's rejection of this claim does not constitute an unreasonable application of federal law. A review of the record indicates that a rational trier of fact could have found the essential elements of great bodily injury under California Penal Code § 12022.7. For example, petitioner grabbed Carrie's throat and choked her until she became unconscious. (RT 362, 368, 371-375.) In other words, petitioner choked Carrie

1  with sufficient force that she blacked out.  The Court of Appeal stated "we cannot say that

2  choking a person and depriving her brain of oxygen long enough to cause a loss of consciousness

3  did not qualify as a 'traumatic condition' within the meaning of the statute." (Answer, Ex. 1,

4  People v. Bradshaw, slip op. at 9.)  The court finds that the state court's determination of the facts

5  was entirely reasonable, and that its rejection of this claim was neither contrary to nor an

6  unreasonable application of controlling principles of federal law. The court recommends that this

7  claim be denied.

8       B.    Jury Instructional Error (claims 2 and 3)

9            Petitioner argues that his constitutional right to a fair trial was compromised by

10 erroneous jury instructions.  Federal habeas courts do not grant relief, as might a state appellate

11 court, simply because a jury instruction may have been deficient.  See Estelle v. McGuire, 502

12 U.S. 62, 72-73 (1991).  The only question for a federal court is whether the allegedly erroneous

13 instruction by itself so infected the entire trial that the resulting conviction violates due process.

14 See Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974).

15 _____1.____    Improper Instruction of Felony-Murder Rule

16           Specifically, petitioner contends that the trial court improperly instructed the jury

17 that a killing during a dangerous felony was murder. The California Court of Appeal rejected this

18 claim, noting:

19        At the close of evidence, the jury was instructed in the language of CALJIC No.
          8.51...
20        .....
          It is undisputed that the prosecution did not rely on the felony-murder rule,
21 nor did the trial court instruct on in.  The cited portion of the instruction is not a felony-murder
   instruction; rather, as the next sentence makes clear, the purpose of the sentence is to distinguish
22 between murder and manslaughter.  Even if the sentence should have been excised from the
   instruction, the defendant cannot show prejudice.  In order to prevail on a claim that the jury
23 instructions were misleading, defendant must prove a reasonable likelihood that the jury
   misunderstood the instructions as a whole. In the present case, the trial judge instructed the jury
24 and described each element of the charged crimes and those lesser included therein.  None of
   these instructions suggested that defendant could be convicted of second degree murder based on
25 the felony-murder rule.

26

1   (Answer, Ex. 1, <u>People v. Bradshaw</u>, slip op. at 11-13 (internal citations omitted.))

2       The Court of Appeal's rejection of this claim does not reflect an unreasonable

3   application of federal law.  <u>See</u> <u>e.g.</u>, <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n. 9 (1985) (court

4   presumes jurors follow jury instructions absent extraordinary circumstances).  A single jury

5   instruction is not viewed in isolation, but instead is considered in the context of all the instructions

6   given.  <u>See</u> <u>Spivey v. Rocha</u>, 194 F.3d 971, 976 (9th Cir. 1999).  A careful review of the record

7   indicates that, in the context of all the other instructions given, this instruction distinguished

8   murder from manslaughter when discussing the act involved.

9                    2.        <u>Failure to Instruct on Defense to Spousal Abuse.</u>

10      Petitioner contends that the trial court erred when it failed to sua sponte to instruct

11  the jury on the defense to spousal abuse under California Penal Code § 273.5 that the victim

12  initiated the physical confrontation.  When a petitioner argues that a trial court failed to given an

13  instruction, his burden is especially heavy because "[a]n omission or an incomplete instruction is

14  less likely to be prejudicial than a misstatement of the law."  <u>See</u> <u>Henderson v. Kibbe</u>, 431 U.S.

15  145, 155 (1977).

16      The Court of Appeals rejected this claim, noting that:

17          Defendant's syllogism is strained, to say the least.  Under defendant's
            interpretation of the statue, a defendant who stabbed and bludgeoned his domestic
18          partner would be immune from prosecution under section 273.5 if the evidence
            showed she slapped him first**.**
19

20  (Answer, Ex. 1, <u>People v. Bradshaw</u>, slip op. at 15.)  The court does not find that the Court of

21  Appeal's reasoning was contrary to federal law.  Petitioner has presented no evidence that

22  petitioner was simply resisting offensive touching from Carrie when he choked her into

23  unconsciousness.   As petitioner's theory is not supported by substantial evidence, the trial court

24  had no obligation to instruct the jury on it and the alleged omission of the instruction did not

25  render petitioner's trial fundamentally unfair.  Petitioner's third claim does not satisfy 28 U.S.C. §

26  2254 (d) and verges on frivolous.  Accordingly, the court recommends that this claim be denied.

IV.    Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 22, 2006.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

9